ASA BREWER AND ANOTHER V. A. S. WALL.

The husband may, during the life-time of the wife, sell their community property, except the homestead, without her consent.

After the wife's death, the husband may carry into effect, contracts respecting their community property, entered into jointly with her, or by himself before her death.

The husband's bond, to compel his wife to convey the homestead, would be an unlawful contract; but his bond to convey it, by good title, at a future day, is not void, and damages may be recovered from him, upon its breach.

Though the specific performance of such a bond, by the husband, ought not to be decreed, whilst the premises remain the homestead of the obligor and his wife, yet, if they be either community property, or the separate property of the husband, and if the wife die, or if they acquire another homestead before the time specified for performance, the specific execution of the contract may be decreed.

The homestead right of the wife does not survive at her death, so as to vest a similar right in the children of the marriage; and, if it be the husband's separate property, he may sell it.

APPEAL from Panola. Tried below before the Hon. Charles A. Frazer. The facts are stated in the opinion.

*Poag* and *De Berry*, for the appellants.—Hart. Dig., Art. 174, provides the manner in which the wife shall convey property in which she has an interest, and also the manner in which

38

the homestead shall be conveyed; that is, by privy examination before an officer. This not having been done, and her consent never having been obtained, in the manner pointed out by the legislature, no interest that she may have had in the land passed by the bond or conveyance signed by her and her husband; but she clearly retained whatever right she had in the land up to the time of her death.

The land being also the community property of Wall and his wife, we admit that Wall, the husband, had the power, under Art. 2422, Hart. Dig., to dispose of the whole of the land, her interest as well as his own, without her consent, during the marriage, if it had not been that the land (200 acres) was also the homestead, and being the homestead, could not be conveyed in any other manner than that pointed out by Art. 174.

The land being the homestead, was not conveyed by Wall and his wife, in the manner pointed out by law, and her interest in it as community property, remained unimpaired by the act of herself or her husband, up to her death, and passed to her lawful heir, her child, and became immediately vested in that child, Rebecca Wall.

At the death of Wall's wife, his power to dispose of the community property, without his wife's consent, under the authority conferred by Art, 2422, ceased; the law conferred that power during the marriage only. Wall's wife died 1st of March, 1855, long before the passage of the Act, 26th of August, 1856, (6th Leg., adjourned session, p. 51; supplementary to Act of 13th March, 1848.) Therefore, that act could not affect the rights of the heir of Mrs. Wall; the right of her heir being a vested one before the passage of the law.

*M. D. Graham* and *Charles D. Moore*, for the appellee.

*P. Murrah*, also for the appellee.

BELL, J.—This suit was instituted by the appellee, Wall, against the appellants, on a promissory note. The petition al-

leged, that the note was executed for a part of the purchase-money, of a certain tract of land, upon which the vendor's lien still existed, in favor of the plaintiff. The defendants stated in their answer, that in February, 1855, they purchased from the plaintiff, the tract of land described in the petition of plaintiff, as the land on which his vendor's lien existed; that the price to be paid was $1200; that in February, 1855, at the time of the purchase, the plaintiff gave them a bond for title to the land; the bond is filed with the answer, and shows, that it was signed and sealed by A. S. Wall, and that it was signed by Caroline Wall, without a seal. The answer alleges, that Caroline Wall was the wife of A. S. Wall, and that the whole of the tract of land in question, was the community property of Wall and wife, and that 200 acres of it constituted the homestead of Wall and his wife. It is also alleged, in the answer, that Wall and his wife, Caroline, remained in possession of the premises, after the execution of the bond to the defendants, until the death of Mrs. Wall, about the 1st of March, 1855; that Mrs. Wall left a child about four years of age, at the time of the filing of the answer; that the bond for title executed in February, 1855, was never acknowledged by Mrs. Wall, in the manner required by law, to make it binding on her as a conveyance of the homestead. The answer shows, that about two-thirds of the purchase-money, ($1200,) was paid by defendants about the 17th of March, 1856, and the note sued on was executed for the balance of the purchase-money remaining due upon the land. The answer did not tender restitution of the land, but professed to bring into court the amount due upon the note; and asked for an equitable adjustment between the defendants and the minor child of Mrs. Caroline Wall, deceased, and the plaintiff. The answer also averred, that permanent and valuable improvements had been made by defendants, upon the land, and prayed that these improvements should be taken into consideration, in the adjustment to be made by the court, between the defendants and the minor.

The plaintiff excepted to this answer of the defendant, and

the exception was sustained by the court. There was a verdict for the plaintiff; and judgment condemning the land to be sold, in payment of plaintiff's debt.

It is contended by the counsel for the appellants, that their answer presented a good defence to the suit, and that the court below erred in sustaining the exceptions to the said answer. The position assumed by the appellants' counsel in the argument is, that the sale of the land, in February, 1855, to the appellants, was inoperative, so far as the 200 acres, constituting the homestead, were concerned; and, inasmuch as the sale did not take effect as to the said 200 acres, the wife's interest in that much of the land, vested in her child; the same having been community property between A. S. Wall, and his wife, Caroline Wall.

We are of opinion, that there was no error in the ruling of the court below, upon the exception to the answer. Without pausing to inquire, whether or not, the defendants below ought to be heard, to urge the facts set forth in their answer, as a defence to the suit, while they remain in possession of the land, and where the contract is shown to have been, for the most part, executed, we think the plaintiff below was clearly entitled to recover, upon other grounds.

The husband has the right, during the lifetime of the wife, to sell their community property, even without the consent of the wife, unless the same be the homestead of the family; in which case the husband is not at liberty, during the wife's life, to alienate it without her consent. This court has decided, that the husband, as survivor of the connubial partnership, has authority after the death of the wife, to carry into effect, contracts respecting their common property, entered into by himself alone, or jointly with the wife, before her death; so that where the husband and wife gave bond for title to a portion of their community land, it was held that the husband, after the wife's death, might make full title, in pursuance of the previous bond. (See Primm v. Barton, 18 Texas Rep. 206.) And, if the bond be given by the husband alone, in the wife's life-time, he may make title after her death; because, to do so, is only to carry into effect a con-

tract which he was fully empowered by law to make, at the time of the execution of the bond. It is true, that a husband is not at liberty to alienate the homestead, during the wife's life, without her consent. But we cannot perceive, that a bond executed by him, in his wife's lifetime, conditioned that he will convey his homestead, with a perfect title, at a future time, would be a void instrument, in contemplation of law. We think such a bond would be binding upon the husband, and that, upon a breach of it, damages might be recovered against him, by suit upon the bond. Undoubtedly, a bond to compel the wife to convey at a future time, would be void, because it would be an undertaking to do an unlawful thing. But a bond to make title at some · future day, to a certain tract of land, the same being the homestead of the obligor and his wife and children, would not be an unlawful undertaking. Such a contract might be entered into, in the confident expectation that the wife would freely make the necessary conveyance; or, it might be entered into with the intention to acquire another homestead, before the time elapsed for the performance of the bond. It is true, that while the premises which the party might so undertake by his bond to convey, remained the homestead of the obligor and his wife, the courts would not decree a specific performance of the bond. But if the wife should die, before the time expired for the performance of the bond; or if, before the expiration of that time, the obligor in the bond and his wife, should acquire another homestead, then the courts might decree specific performance of the bond; because every legal obstacle to a specific performance would be removed.

This court has decided, and the constitution clearly contemplates, that the homestead right of the wife does not survive after her death, so as to vest a homestead right in the children of the marriage. In other words, after the death of the wife, the husband may sell the homestead, if it be his separate property; the children having no interest in the homestead, which restricts the father's right to sell. (Tadlock v. Eccles, 20 Texas Rep. 782.) The 22d section of the 7th article of the Constitu-

tion, in speaking of the homestead exemption, says: "Nor shall the owner, if a married man, be at liberty to alienate the same, (meaning the homestead,) without the consent of the wife;" clearly, as we think, implying, that if the owner be not a married man, he shall have the power to alienate the homestead.

These views lead us to the conclusion, that the appellee, A. S. Wall, is in a condition to make perfect title to the land described in the bond of February, 1855, and that he can be compelled to a specific performance of the same. He, therefore, had a right to recover upon the note sued on, and the judgment of the court below will be affirmed.

Judgment affirmed.