## H. H. KIRKLAND v. CHARLES LITTLE ET AL.

1. CONSTRUCTION OF A CONTRACT FOR SALE OF LAND.—An obligation for the balance of purchase money, payable on a day certain if the title to the land be perfected to the satisfaction of the vendee, otherwise not to be paid until title be so perfected, becomes due when the vendor has conveyed to the vendee a complete and perfect title to the land, or has become able to do so, and has advised the vendee of the fact.

2. The vendee in such contract cannot be put in default until advised of such deed, or of the character of conveyance by which it is proposed to complete the title to the land.

3. PLEADING.—A petition upon such an obligation would be imperfect unless it contained a distinct averment that the title to the land was perfect.

4. PRACTICE—AMENDMENT—COSTS.—An amendment setting up facts perfecting title subsequent to the institution of suit must be treated as a new suit, the costs up to such amendment to be taxed against plaintiff.

5. ADMINISTRATION OF COMMUNITY PROPERTY.—To enable the surviving husband to have exclusive control of community property after the death of the wife, it is necessary that an appraisement be filed, as well as an inventory and bond.

6. HOMESTEAD.—The surviving husband on a second marriage cannot convey the property which was community property in the first marriage, and which, after the second marriage, was the homestead, without the consent of the second wife.

7. SPECIFIC PERFORMANCE.—That both parties were ignorant of want of title in a material part of land sold, will not entitle the vendor to enforce payment, if evidence shows that such vendor is insolvent when seeking to enforce such payment.

APPEAL from Henderson.     Tried below before the Hon. John G. Scott.

Charles Little and Thomas Little sued in the District Court of Henderson county H. H. Kirkland upon the following obligation:

"$1,500.                 DECEMBER 19, 1870.

"On or before the first day of January, 1872, I promise to pay Charles Little, Robert Little, and Thomas Little the sum of fifteen hundred dollars specie, for the balance

of the purchase money of 350 acres of land situated in Henderson county, Texas; said amount, fifteen hundred dollars specie, to be paid at the time specified if the title to said land is perfected to the satisfaction of said H. H. Kirkland, otherwise not to be paid until said title is so perfected. Said note to bear ten per cent. interest from the first day of January, 1872, until paid, upon the above conditions.                    H. H. KIRKLAND.

" Witnesses :

" D. H. CONNELLY,

" A. F. CONE."

The original petition was in the usual form of an action on a promissory note; its execution; that it was overdue; that it was a lien upon land describing it, &c.

The defendant excepted: (1) because it did not appear that the obligation was due, and (2) because no title had been tendered to defendant for the land.

In answer, defendant alleged that plaintiffs were unable to make title to the land; that it belonged to Charles Little and his children by a second wife; that a tract of about 80 acres, represented to be part of the land included in the title bond, was not in fact ever owned by Charles Little, but was owned by one W. R. Buford; that this was the most valuable of the land sold; setting up improvements on that part of the tract, &c.; asking that the contract be rescinded; for damages, &c.

By amendment, plaintiffs alleged execution and delivery by Charles Little of a deed for the land with general warranty; that he had filed an inventory of the community property (including that described in the petition) owned by himself and deceased wife, and had filed a bond, conditioned and approved as prescribed by law, whereby he was given the control and management of the community estate, and could convey said land; denying fraud, &c.

The facts in evidence sufficiently appear in the opinion of the court.

There was judgment for the amount of the note and an order for sale of the land.

Defendants appealed.

*Reagan & Greenwood,* for appellant.

No brief for appellee.

MOORE, ASSOCIATE JUSTICE.—The contract or agreement upon which this suit is brought is copied in and made a part of the petition. By its terms appellant promised and bound himself to pay appellees, on or before the first day of January, 1872, the sum of fifteen hundred specie dollars, the balance of purchase money for a tract of land bought of them, if the title to said land should be perfected by that time to the satisfaction of appellant, otherwise not to be paid until said title was thus perfected. Evidently, at the time this agreement was entered into, the parties supposed that there was some defect or uncertainty of some sort in the title which was given appellant. And to secure him against any damage or injury which might result therefrom, it was agreed that this part of the purchase money should not be paid by appellant until he should be satisfied that his title had been fully perfected.

It is not, however, the legal effect of this agreement that appellant might refuse payment for any mere captious or unreasonable objection to the title. His dissatisfaction must be founded upon some valid and legal objection. When it is made to appear that appellees have conveyed or caused to be conveyed to him a complete and perfect title to the land, or that they are able and ready to do this, and he is advised of the fact, then his obligation becomes absolute and unconditional, whether he is satisfied or dissatisfied with the conveyance. But, unquestionably, before appellant could be put in default, or called upon to pay the balance of the purchase money, he must be advised of the character of the conveyance by which it is claimed the title

has been or it is proposed it will be perfected, so that he can accept it, if satisfactory, or if not, indicate the grounds of his objection.

The perfection of the title being the predicate upon which appellees' right of action depended, it should have been clearly and distinctly shown in the petition. In this respect the original petition was unquestionably defective, and the exceptions to it were well taken.

To cure this defect in the original petition, appellees filed an amended petition, in which they say that the land sold appellant was community property of the appellees, Charles Little and his deceased wife, at the date of her death, and that since the institution of this suit he had filed an inventory of the community estate of himself and his said deceased wife, and given bond for the payment to the heirs, &c. And they aver that said Charles Little was then ready to make appellant a good and sufficient title.

As this amendment, in effect, admits that appellees were not prepared to perfect appellant's title until since the commencement of their suit, it can at most be only regarded as a tender of title at the time it was filed. If appellees had clearly shown by this amended petition their ability to perfect appellant's title, and he had refused to accept such perfected title and pay the balance of the purchase money for the land, if he had no other defense, judgment for the amount to be paid as agreed in the contract, and costs of suit subsequent to the filing of the amended petition, might have been warranted by this amendment. But the costs prior thereto should have been paid by them.

We are, however, by no means satisfied that the averments of this amended petition are sufficient to show their ability to perfect the title, in respect to the matter to which it refers, when tested by the general exception of appellant previously filed, to which it unquestionably must be held applicable. Without pausing to comment on the vague and indefinite character of all its averments, it is sufficient

to say that it is nowhere alleged that an appraisement of the estate of Charles Little and his deceased wife had been made or returned, as required by the statute. This is, we believe, absolutely essential to entitle the survivor of the community to manage and dispose of the interest of the deceased partner in the community estate. (Pas. Dig., art. 5494.)

But as this ground of error is more clearly presented by the exceptions to the ruling of the court on the objections to the evidence offered to show that appellant's title had been perfected, and also to the charge given the jury, in which the court evidently erred, as will be seen by reference to the section of the statute first cited, it is unnecessary to make further comment on this branch of the case.

The appellee, Charles Little, married a second wife prior to the sale of land, and as it was his homestead, although she had separated from him and had gone elsewhere to reside, as they were not divorced, the fact that his wife did not join in the conveyance seems also to have been one of the supposed defects in the title, in contemplation of the parties when appellant purchased the land. This does not however appear, from the manner in which it is presented in the record, to have been regarded as a matter of any very great importance. And we deem it unnecessary to discuss the alleged errors in the ruling of the court on the questions made during the progress of the trial in regard to it. We refer to it merely to remark, in view of the proper disposition of the case on another trial, that the facts are not sufficiently presented in the record to enable us to say whether or not Mrs. Little's joinder in the conveyance was necessary to the perfection of appellant's title, or whether, under all the circumstances, he can claim as a credit on his obligation to appellees the money he paid for the relinquishment which she subsequently made to him of her interest in the land.

In addition to these alleged defects in the title of appel-

lees when it was brought by appellant, there is still another of a much more serious character, which, so far as we can judge from the record, was not within the knowledge or contemplation of either of the parties at the time they made the trade. No objection has been made by appellant to the title which appellee, Charles Little, acquired by the deed of O. M. Wheeler to that part of the land sold him by appellees, which is on the Sanches league; but from the statement of facts it seems to be very clear that seventy-nine or eighty acres of the land embraced in the conveyance from appellees to him is not on the Sanches league, but is a part of an adjoining tract patented to W. R. Buford, under whom no claim of title whatever is made by appellees. If this is the fact, there can be no reasonable pretense upon which appellees can demand payment for this part of it from appellant without securing to him a valid title to it. Should it turn out, however, that appellees are unable to do this, what then will be the rights of the parties if, as is alleged in the answers of appellant, and proved by several witnesses, who are uncontradicted, that appellees are insolvent and unable to respond in damages for a breach of the contract on their part? If so, their inability to make title to so large a proportion of the entire tract will present the most embarrassing question which will probably arise on the final determination of the case. As, however, this question is not directly presented by the record as it now comes to us, and has not been discussed by counsel, it would be premature for us to undertake definitely to determine it at this time. We will say, however, that it is believed the rules of equity applicable in such cases will be found sufficient to enable the court to settle the controversy, if the literal terms of the contract cannot be carried out so that substantial justice will be done, and effect given to its true spirit and broader equitable import, lying beneath and outside of its legal stipulations, to which resort may be had, when it is found, owing to

something not within the contemplation of the parties, it cannot be carried into full effect according to its letter and legal construction.

A number of exceptions were taken to the different rulings of the court during the progress of the trial, and in most, if not all of them, we think the court erred. But as it is not probable, if any of them should arise upon another trial, that the court, as now organized, will fall into similar errors, we deem it an unnecessary consumption of time to point them out. Neither will we, for the same reason, comment upon the errors contained in the charge of the court. The assignment of error in this particular is general, and points out no specific error in the charge of the court to which objection is made. This character of exception, as has frequently been said, is ordinarily improper, and does not require notice by this court. If, however, it is justifiable in any case, when the charge embraces more than one proposition, it is certainly so in this; for although the charge of the court refers to most if not all of the points of controversy on which the parties were at issue, a cursory examination of it is sufficient to show that the law has not been correctly or plainly and intelligibly given upon one single proposition embraced in it.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.