## MARY F. LONG ET AL. v. A. A. WALKER.

In 1858 L sold to D, lots, which were the community property of L and his wife, who was then living. D paid part of the purchase-money, and received a bond for title, to be made when the rest was paid. After the death of L's wife, D, who had gone into possession, sold to W, to whom he assigned the bond for title. W gave his note to L for the amount of purchase-money unpaid, and D's note was delivered up and canceled. Afterwards, in 1863, W paid the purchase-money note in Confederate treasury notes, to L, who, a few days before, had deposited in the county clerk's office an unsigned inventory and appraisement of community property, which was approved and recorded. In a suit by the heirs of L's wife against W, to recover half the property, or its equivalent, as their interest in the estate of their mother: *Held*—

1. While the inventory and appraisement may not have been full, yet from the facts above stated, in connection with the fact that it was indorsed as having been sworn to, by the clerk, and was indorsed, "approved and ordered to be recorded" by the Chief Justice, it may be inferred, that it was returned into court by L, as an inventory and appraisement of the community property, and that it was recognized by the Chief Justice as done by him in compliance with the statute. (Paschal's Dig., art 4648.)

2. Even if L had not filed an inventory and appraisement, still, having sold the lots in the lifetime of his wife, and given a bond for title, and having received part of the purchase-money, and a note for the balance, he had the right after the death of his wife to execute a deed in pursuance of his obligation in the bond, and receive the payment of the note executed to him for the rest of the purchase-money.

3. The note being payable to L, he could have collected it by a suit at law, and had the land sold in discharge of it.

4. There is nothing in our laws which requires a debtor, under such circumstances, to suffer himself to be sued to interpose a defense to the note, and maintain an expensive and uncertain litigation, in order to protect the possible rights of the children of the marriage, against the possible waste of the community effects by the surviving parent.

5. A rule which would require the maker of a note to act after its maturity, and before payment, with reference to the equitable rights attaching to it in the hands of every one who may have had it by assignment, would be destructive of the negotiability of such instruments.

6. The fact that the payment of the note was in Confederate States treasury notes did not prevent it from being a valid payment when made.

APPEAL from Lamar. Tried below before the Hon. John C. Easton.

The case is stated in the opinion.

*V. W. Hale,* for appellants.—Walker had full notice of the "situation;" and if he paid the amount to Long without the latter first having filed an inventory under the statute, (Paschal's Dig., 46, 48, 49,) he knew he had no right to make such pretended payment, or even payment in money, unless the survivor would first place himself in a situation to receive it. And if Jacob Long had filed an inventory in compliance with the law, then he was acting in a fiduciary capacity; and upon the authority of Kleberg *v.* Bonds *et al.,* 31 Tex., 611, it was no payment to these plaintiffs, for he not only had constructive but actual notice, that Jacob Long was acting in a fiduciary capacity, and he, being now insolvent, they have no recourse, except on Walker, for the amount of the one half of this debt which they inherited from their mother.

No such inventory and appraisement as is required by law has ever been filed and "recorded." (See Paschal's Dig., art. 4684.) By reference to that article it will be seen, that it is the duty of the survivor to "file in the County Court a full, fair, and complete inventory and appraisement, &c., to be taken and recorded as in cases of administration, &c." By

reference to Paschal's Dig., art. 1299, it will be seen what is required in cases of administration, "and that nothing less will answer in the case of a survivor filing an inventory, &c., which we believe may be called a *quasi* administration."

The inventory and appraisement in this case falls far short of the requirements of the law, and certainly the courts will give a strict construction, to a statute so dangerous to the rights of minors, and in derogation of common rights—one under which vested rights may be divested out of minors in a manner known only to our statute, and one which the good sense of recent legislators has so amended, as to afford some protection to infants, and, if we are correct, it was an error in the court to permit the so-called inventory and appraisement to be read to the jury as evidence.

Neither the lots in controversy, nor the claim for the purchase-money thereof, was and is shown in said inventory; hence, it is not a full or complete inventory.

The survivor of the conjugal partnership acts in a fiduciary capacity, so far as the management, control, and disposition of the community estate of the survivor and deceased consort is concerned, (see Tucker v. Brackett, 28 Tex., 339,) and if that is true, and the law be correctly determined in the case of Kleberg v. Bonds *et al.*, 31 Tex., 611, we cannot see how this Confederate money paid by Walker to Jacob Long can be a payment to plaintiffs. The proof shows the money (Confederate) to have been paid after the filing of the pretended inventory; the receipt on the note itself shows the payment to have been made on the 7th of April, and the inventory to have been filed on the 4th—only three days before—and that it was a mere pretense for the occasion.

*W. B. Wright*, for appellee.

ROBERTS, CHIEF JUSTICE.—The lots in controversy in this suit, Nos. 1 and 2, in block 16, in the city of Paris, in Lamar county, were the community property of Jacob Long

and his wife, Mary D. Long, in 1858, when he sold them to De Witt, receiving a part of the purchase-money, and giving him a. bond for title, to be made when the balance of the agreed price should be paid, for which De Witt gave his note to said Jacob Long, and took possession of the lots. Afterwards, De Witt traded the lots to Walker, who gave his note to Jacob Long for what was due on the lots from Walker to Long, and received an assignment of the bond for title, and Long gave up his note to De Witt, whereupon Walker went into possession of the land. The. evidence does not show when this trade was made, further than that we find in the record a note from Walker to Long for the said lots, as recited in the note dated on the 7th of February, 1861. Before this arrangement between De Witt, Long, and Walker, the wife, Mary D. Long, had died, (on the 28th of December, 1860.) Afterwards, in 1863, Walker paid the purchase-money note to Jacob Long, in Confederate treasury notes, in full, and received a deed from Jacob Long for the lots. A few. days before the execution of this deed, Long filed, in the clerk's office of the County Court, an inventory and appraisement of the community property, not signed by Long, but approved and recorded.

The plaintiffs, as children and heirs of Mary D. Long, brought this suit to recover the lots, or one half the amount of the note given by Walker to Jacob Long, which was paid by Walker to Long, in Confederate treasury notes, in 1863, when he received the deed for the lots.

The statute requires such an inventory and appraisement "to be taken and recorded, as in case of administration, and to have the same force and effect in all suits between parties claiming under it." (Paschal's Dig., art. 4648.) The same statute authorizes any one interested in the estate to require this to be done, or, upon failure, that administration be granted upon the community estate. In this case, the inventory and appraisement may not have been full, as shown by the facts proved on the trial, and it was not signed by

the surviving husband, Jacob Long; still it embraced lands and lots valued at seven thousand dollars, and under it was written as follows: "Sworn to before me, April 4, 1863. Henry Moore, Clerk C. C. L. C. Approved and ordered to be recorded. F. Miles, Chief Justice. Recorded May 27, 1863. Henry Moore, Clerk C. C. L. C." From these entries it may be inferred that it was returned into the court by Jacob Long as an inventory and appraisement of the community property, and that it was recognized by the chief justice as done by him in compliance with the statute. It is not necessary now to decide that this irregularity in the record, thus made and sanctioned by the proper authority, makes it a nullity as to a person who afterwards paid to said Long a debt due to the community, who had no notice of any fraud committed, or attempted to be committed, in making the inventory and appraisement. That Jacob Long should have signed and sworn to the inventory, according to the statute, would seem to be a very important, if not an essential, part of this proceeding. (Cordier *v.* Cage, 44 Tex., 532; 44 Tex., 174; 41 Tex., 456.)

If there had been no such inventory and appraisement filed, Jacob Long, having sold the lots during the lifetime of the wife, and given a bond for title, and having received part of the purchase-money for them, and a note for the balance, had the right, after the death of the wife, to execute a deed in pursuance of his obligation in the bond, and receive the payment of the note executed to him for the balance of the purchase-money. The case of Brewer *v.* Wall, (23 Tex., 588,) decides this question as to his right to execute the deed.

The note being payable to him, he could have collected it by a suit at law, and had the land sold in discharge of it, as has often been done in our courts. There is nothing in our statutes or laws, as evidenced by the decisions and practice in the courts, which requires a debtor, under such circumstances, to suffer himself to be sued, to interpose a defense to

the note, and maintain an expensive and uncertain litigation in the courts, in order to protect the possible rights of the children of the marriage, against the possible waste of the community effects by the surviving parent.

The note was a chose in action, and the receipt of the payment of it simply reduced the property, which it represented, into possession. Jacob Long was the payee in the face of the note, and if other persons had an equitable interest in it, not represented on its face, a knowledge of that fact by the maker would be no ground for refusing to pay it upon demand by the payee, who was the holder and ostensible owner, in the regular course of business. The contrary rule would require the maker to inquire into and act in reference to the equitable rights, attaching to the note in the hands of every person that might have had it by assignment, before its payment, which would be destructive of the negotiability of such instruments.

Suppose Jacob Long had sued Walker on this note: would the court have sustained a plea in abatement filed by Walker, that these plaintiffs had an interest in the community estate, of which this note was a part? If not, he had a right to pay it without suit. Had such a suit been brought, and they had intervened in it, claiming a half interest therein, and the court had entertained any such intervention, it would have involved the settlement and adjudication of the whole community estate, in which the defendant would have no interest, and for which it might be difficult to find a precedent. Such an intervention might well be refused them as an equitable remedy, because they have an ample remedy under the statute, by requiring an inventory and appraisement of the community estate, and a bond for its faithful administration. (Paschal's Dig., art. 4648.)

It is contended, that Jacob Long had no right to receive payment in Confederate treasury notes. It is not shown what was the value of said notes, or upon what terms they were received. The mere fact that the payment was in that

currency, did not prevent it from being a valid payment at the time it was made.

There is nothing alleged in the pleadings or shown in the evidence which makes this otherwise than an ordinary transaction in all of its parts; and, especially, nothing tending to establish that Jacob Long intended any fraud upon the rights of his children by making the deed and receiving the payment of the note, or that Walker did not, in good faith, pay his debt to Long, which he was bound to do before he could get his title, in the ordinary course of business, and without any notice of any fact that would render it illegal or inequitable on his part.

The views here presented are based upon the facts alleged and established beyond controversy, to wit, that the lots were sold before the death of the mother of plaintiffs, and the deed was executed in pursuance to the bond for title, and the note given for the lots was paid in Confederate treasury notes after her death. Upon such facts, the defendant was entitled to a verdict and judgment in his favor.

The court, in its charge, required, in addition to these, that Jacob Long should have returned an inventory and appraisement, and instructed them that it had been done: If he was mistaken in the fact that a legal inventory and appraisement was returned, he was equally mistaken in the instruction that such an inventory and appraisement were necessary to establish the defense. The charge neutralized itself, and was immaterial, as it required, apart from this, all of the other facts to be established which were necessary for the defense. The other issues made in the pleading and evidence, in regard to the disposition of the community effects, are also immaterial, in the view we take of the case.

Judgment affirmed.

AFFIRMED.