Opinion delivered May 11, 1888.

---

No. 6280.

J. M. GARNETT ET AL *v.* E. V. & B. JOBE.

1. DEED—PAROL CONTRACT—EXCHANGE OF LAND.—A deed made by the surviving husband after the death of his wife, to land which the husband had by parol contract bargained in exchange for other land during the life time of the wife (each party having entered into possession under the parol contract, and made permanent and valuable improvements), passes title when executed in pursuance of such contract, either to the contracting party or to his heirs at his request. Against the title thus conveyed, the heirs of the deceased wife can enforce no claim of right.

APPEAL from Johnson. Tried below before the Hon. J. M. Hall.

*Davis & Plummer*, for appellants: The husband, after the death of the wife, is bound, or at least has a right by law, to carry out all contracts made by him during the life of the wife in relation to the community property; and all acts of his done

for that purpose is valid and binding on the heirs of the wife. (Long v. Walker, 47 Texas, 175–179; Carter et al. v. Conner, 60 Texas, 55–60, and all the authorities therein cited.)

*James W. Brown,* for appellee.

STAYTON, CHIEF JUSTICE. J. W. Jobe was the father of W. P. Jobe. He died in 1883, leaving several children. W. P. Jobe died in 1885, leaving two children, who were the plaintiffs in this case, and seek to recover, as heirs of their mother, an interest in a tract of sixty-five acres of land conveyed to their father by a deed of date November 6, 1882. Their mother died in August, 1881, and the evidence renders it probable that, at the time of her death, the land was held under an executory contract to purchase; for there was one hundred and twenty-five dollars due on the purchase money after her death; and, although she and her husband lived for a time on the land, no deed was made to him until after her death. They built a small house and cleared five or six acres of the land.

In the year 1872, J. W. Jobe bought ninety-eight acres of land, then unimproved, upon which he subsequently lived, and on which he made improvements which increased the land in value about nine dollars per acre. He held the land under a bond for title, and owed about four hundred dollars on the purchase money. On October 2, 1882, the persons from whom he purchased deeded this land to W. P. Jobe.

It is shown that in May, 1881, J W. and W. P. Jobe entered into a parol agreement for an exchange of lands, under which the former was to have the land in controversy and pay the balance of the purchase money due on it, and the latter was to have the ninety-eight acres, which the father held under bond for title, and to pay the four hundred dollars still due on the purchase money. After this agreement was made the parties occupied the lands which, under it, they were each to have, and on that in controversy J. W. Jobe made permanent and valuable improvements. The evidence tends to show that he paid the balance of the purchase money due on it. This verbal contract was testified to by many witnesses, most of whom were of the family, and there can be no reasonable doubt of its existence or terms.

It was shown that W. P. Jobe repeatedly promised to convey the land in controversy to his father, and seems to have delayed

doing so for want of proper description of it. He is also shown to have expressed regret that a conveyance was not made before the death of his wife. W. C. Jobe was living on the ninety-eight acres of land, under a different contract, at the time the contract for exchange of lands was made; and his father was occupying the land in controvery under the same contract.

A short time before the death of J. W. Jobe he requested his adult children to convey the land in controversy to his two minor children, A. P. and N. S. Jobe, assigning reasons for this most natural and commendable. In pursuance of this request the adults, including W. P. Jobe, on November 23, 1883, made a deed conveying the land in controversy to the minors. This conveyance, it is conceded, passed whatever interest W. P. Jobe had in the land, but it is claimed that it did not convey the interest which his children now claim through inheritance from their mother. The appellees also claimed that the separate means of their mother was used in part to pay for the land, but there is no evidence entitling this claim to serious consideration. The cause was tried without a jury, and a judgment was rendered in favor of the plaintiffs for one-half of the land.

Holding, as did W. P. Jobe, the land in controversy under some kind of a contract that did not vest in him the title, and the payment of the purchase money being necessary before he could have acquired title, we are of the opinion that he had the power to make such a contract as he made with his father, and had this been in writing there would probably have been no controversy between the parties.

There seems not to arise any question of homestead, for at the time the mutual agreement for exchange of lands was made, and from that time until the death of his wife he, with his family, resided on the ninety-eight acres which he was to receive and did receive in exchange for the land in controversy. So far as the record shows the appellees hold the ninety-eight acres of land through inheritance from their father and mother; but, notwithstanding this, they now seek to hold one-half of the sixty-five acres; which was in part, at least, paid for by their grandfather.

The price for the interest held by their father and mother was paid in the exchange and their grandfather entered upon it and made such permanent and valuable improvements as would have entitled him to have the verbal contract specifically

performed. Under these facts, we are of the opinion that the deed made by their father, although made after the death of their mother, vested title in A. P. and N. S. Jobe.

The judgment will be reversed and here rendered in favor of the appellants.

It is so ordered.

*Reversed and rendered.*