**THOLL et al. v. SPEER et al.** (No. 9536.)

(Court of Civil Appeals of Texas. Fort Worth. March 26, 1921.)

**1. Husband and wife ⬥276(1)—Suit to cancel lease held collateral attack on order appointing community administrator.**

A suit by the heirs of a wife to cancel an oil and gas lease made by the husband as community administrator, on the ground that the court was without jurisdiction to appoint an administrator because there were no community debts, is a collateral attack on the order of appointment.

**2. Judgment ⬥475—Orders of county court not subject to collateral attack unless lack of jurisdiction appears of record.**

The county court is a court of general jurisdiction over the estates of decedents, and, unless a lack of jurisdiction in a given case affirmatively appears of record, its orders will not be subject to collateral attack.

**3. Husband and wife ⬥276(1)—Existence of community debts presumed when record of appointment of administrator does not show contrary.**

Where the proceedings in the county court on a husband's application for appointment as community administrator does not affirmatively show an absence of community debts, all reasonable presumptions will be indulged in favor of the validity of the judgment appointing the administrator, especially as Sayles' Ann. Civ. St. 1897, arts. 2221–2228, did not provide that the appointment was dependent on the existence of debts.

**4. Husband and wife ⬥276(6)—Husband as community administrator authorized to make oil and gas lease.**

Where the proceedings in the probate court on a husband's application for appointment as community administrator were in strict compliance with Sayles' Ann. Civ. St. 1897, arts. 2221–2228, an order approving the inventory and appraisement and authorizing the husband as administrator to control, manage, and dispose of the community property, authorized the execution of an oil and gas lease covering community property.

**5. Husband and wife ⬥276(6)—Husband appointed community administrator held authorized 17 years after appointment to make oil and gas lease.**

Under Sayles' Ann. Civ. St. 1897, art. 2238, providing, relative to the administration of community estate, that the persons entitled may demand and have partition and distribution after the lapse of 12 months, where a husband was appointed community administrator in 1901, and no demand for partition and distribution was made by the wife's heirs, he was authorized, in 1918, to make an oil and gas lease.

Appeal from District Court, Stephens County; W. R. Ely, Judge.

Suit by J. H. Speer and others against F. J. Tholl and others. Judgment for plaintiffs, and defendants appeal. Reversed and rendered.

Rosser J. Coke, of Dallas, and Rowland & Talbott, of Bartlesville, Okl., for appellants.
Jno. W. Hill, of Breckenridge, for appellees.

DUNKLIN, J. On July 26, 1901, T. S. Speer made application to the county court of Stephens County to be appointed administrator of the community estate of himself and his deceased wife, Mrs. N. P. Speer. That application was duly heard and considered by the court on the same day it was filed, and appraisers were appointed, as provided by the statutes. Later, an inventory and appraisement of the community property and list of claims belonging to the community estate were filed, duly signed and sworn to by the applicant and appraisers, as provided by the statutes, also the bond of T. S.

Speer with sureties thereon in terms of the statutes, which inventory and appraisement and list of claims and bond were duly approved by the county judge of Stephens county, on August 10, 1901, and the order of approval further expressly authorized T. S. Speer as administrator to control, manage, and dispose of the community property of himself and his deceased wife in accordance with the provisions of the statutes.

A tract of land consisting of 160 acres, situated in Stephens county, belonged to the community estate of T. S. Speer and Mrs. N. P. Speer and was listed as such in the inventory and appraisement mentioned. That tract was also the homestead of T. S. Speer and wife at the date of the death of Mrs. N. P. Speer, which occurred on September 19, 1900. After so qualifying as such administrator, T. S. Speer proceeded to exercise the powers given him by the order of court and continued to do so without objection on the part of any of his children or their descendants up until the date of his death, which occurred July 11, 1918.

On April 4, 1918, T. S. Speer, for himself and as administrator of the community estate of himself and his deceased wife, and joined also by his second wife, Mrs. M. C. Speer, executed to Roy Cherryholmes and Elmer Gatewood an oil and gas lease upon the tract above mentioned. The lease contained the recital of a cash consideration paid of $1,500 and certain covenants and agreements on the part of the lessees. It stipulated that it should run for a period of five years from its date and as much longer as either oil or gas should be produced from the land in paying quantities. It provided that the lessors should receive a royalty of one-eighth of all the oil produced from the land and a stipulated sum as a royalty for all gas produced. It further provided that unless operations for the drilling of a well should be commenced by the lessees within one year from the date of the instrument, the lease should terminate unless on or before the expiration of the one-year period the lessees should pay to the lessors the sum of $400, which would operate as a rental for one year next succeeding, and with privilege to the lessees to continue the lease in force for the full period of five years either by beginning drilling operations or by the payment of a like annual rental. The lessees were further given the right to assign the lease or any portion thereof, and there was a stipulation in the instrument that such assignee should be subrogated to the rights of the original lessees to the portion or portions so assigned. It was further provided that the rentals should be paid directly to the "lessor, or by lessee's check mailed, postage prepaid, to lessor at Jacksboro, Tex., or to First National Bank of Jacksboro for lessor's credit on or before the date any such rental shall become payable; said bank, by power irrevocable, is hereby made the agent of lessor to accept all rentals paid hereunder, and the same shall continue as the depository of such rentals during the life of this lease regardless of changes in the ownership of said land or said rentals." It was further provided that the cash payment of $1,500 was accepted as a sufficient consideration to support every covenant contained in the instrument, including specifically the option granted to extend the lease from year to year by paying rentals in lieu of beginning drilling operations. The lease was duly filed for record in the deed records of Stephens county. All the rentals necessary to continue the instrument in full force up to the date of the trial, as provided for in the lease, have been deposited in the bank named in the lease as a depositary, in accordance with the terms of the instrument.

T. S. Speer abandoned the land in controversy as a homestead some four or five years prior to his death and with his family moved into another county.

The children and grandchildren of Mrs. N. P. Speer, deceased, instituted this suit in the form of trespass to try title against the lessees in the instrument and others claiming under them by assignment, to recover title to the land, and in the petition a prayer is made for a cancellation of the lease as a cloud upon plaintiffs' title, it being alleged that the lease was void for several reasons, the substance of one of which was that the county court was without jurisdiction to appoint T. S. Speer administrator of the community estate of himself and of his deceased wife and to give him the power recited, by reason of the fact that the community estate of himself and his said wife owed no debts at the time of such appointment and therefore there was no necessity for such administration. Mrs. M. C. Speer, the second wife of T. S. Speer, and the depositary bank were also made defendants, but Mrs. M. C. Speer filed a disclaimer of title, and the bank tendered into court the rentals deposited with it, subject to the disposition of the court and asked to be discharged with its costs. Defendants have appealed from a judgment canceling the lease.

The controlling questions to be determined are: First, whether or not the order of the court appointing T. S. Speer administrator of the community estate of himself and his deceased wife was void; and, second, if it is not subject to that attack, whether or not the authority expressly given to T. S. Speer by the order of appointment to control, manage, and dispose of the community property continued in force up to the date of the execution of the lease in controversy and authorized the execution of that instrument as a contract binding upon the undivided interests in the land in controversy which plain-

tiffs inherited from their mother and grand-mother, Mrs. N. P. Speer. We have reached the conclusion that both of those issues should be determined in favor of the defendants in the trial court, who are appellants here.

[1, 2] The attack made upon the order of the probate court appointing T. S. Speer was a collateral attack. The county court is a court of general jurisdiction over the estates of decedents, and unless a lack of jurisdiction in a given case affirmatively appears of record, its orders will not be subject to a collateral attack. Waterman Lbr. & Supply Co. v. Robbins (Com. App.) 206 S. W. 827; Martin v. Robinson, 67 Tex. 368, 3 S. W. 550; 15 R. C. L. pp. 355–357. The articles of the statutes relating to administration of community property which were in force at the time of the death of Mrs. N. P. Speer appear in Sayles' Texas Civil Statutes in the edition published in 1897. Article 2221 reads as follows:

"Where the wife dies or becomes insane, leaving a surviving husband and child, or children, the husband shall have the exclusive management, control and disposition of the community property in the same manner as during her lifetime, or sanity, and it shall not be necessary that the insane wife shall join in conveyances of such property, or her privy examination and acknowledgment be taken to such conveyances, subject, however, to the provisions of this chapter."

### Article 2222:

"The husband shall, within four years after the death of the wife, or her being declared insane, as provided by law, when there is a child, or children, file a written application in the county court of the proper county, stating. * * *"

Article 2223 provides for the appointment of appraisers.

### Article 2224:

"It shall be the duty of the surviving husband, with the assistance of any two of the appraisers, to make out a full, fair and complete inventory and appraisement of such community estate, and the husband shall attach thereto a list of all community debts due the estate, and such inventory, appraisement and list shall be sworn to and subscribed and returned to the court within twenty days from the date of the order appointing appraisers, and in like manner as in other administrations."

### Article 2226:

"When any such inventory, appraisement, list of claims and bond are returned to the county judge, he shall, either in term time or in vacation, examine the same and approve or disapprove them by an order to that effect entered upon the minutes of the court, and when approved the same shall be recorded upon the minutes of the court, and the order approving the same shall also authorize such survivor to control, manage and dispose of such community property in accordance with the provisions of this chapter."

### Article 2227:

"When the order mentioned in the preceding article has been entered, such survivor, without any further action in the county court, shall have the right to control, manage and dispose of such community property, real or personal, in such manner as may seem best for the interest of the estate and of suing and being sued with regard to the same, in the same manner as during the lifetime of the deceased, and a certified copy of the order of the court mentioned in the preceding article shall be evidence of the qualification and right of such survivor."

### Article 2228:

"The survivor shall keep a fair and full account and statement of all community debts and expenses paid by him, and of the disposition made of such community property, and upon final partition of said estate shall account to the legal heirs of the deceased for their interest in such estate, and the increase and profits of the same, after deducting therefrom all community debts, unavoidable losses, necessary and reasonable expenses, and a reasonable commission for the management of the same."

### Article 2238:

"After the lapse of twelve months from the filing of the bond of the survivor, the persons entitled to the deceased's share of such community estate, or any portion thereof, shall be entitled to demand and have a partition, and distribution thereof in the same manner as in other administrations."

[3, 4] By none of those statutes is the jurisdiction of the court to vest in the survivor of the community estate the power to control, manage, and dispose of the community property made dependent upon the existence of debts owing by the community estate. It will be observed that by article 2224 it is provided that with the inventory to be returned the survivor shall attach thereto "a list of all community debts due the estate," and nothing is said in any of those articles with respect to debts owing by the community estate. At all events, the record of the probate proceedings in the county court upon the community estate did not affirmatively show an absence of community debts, and it is a familiar rule that under such circumstances all reasonable presumptions will be indulged in favor of the validity of such a judgment. The proceedings in the probate court were in strict compliance with the provisions of the statutes, and we are clearly of the opinion that the order finally made vested in J. H. Speer the power to execute such an instrument as the one in controversy in this case. We shall not undertake a full citation of all the authorities which we think abundantly support the conclusion, but shall refer to a few of them only, in which

many others are cited, and in some of which sales made by the survivor without any community administration under the statutes were upheld. Morse v. Nibbs, 150 S. W. 766; Dawson v. Holt, 44 Tex. 174; G. W. T. & P. Ry. Co. v. Goldman, 87 Tex. 571, 29 S. W. 1062; Cordier v. Cage, 44 Tex. 532; Sealey v. Mutual Land Co., 184 S. W. 1073; Pierce v. Gibson, 108 Tex. 62, 184 S. W. 502, 1 A. L. R. 1675; Rice v. Lipsitz, 211 S. W. 294; Stone v. Jackson (Sup.) 210 S. W. 954; Garnett v. Jobe, 70 Tex. 696, 8 S. W. 505.

In many of the decisions, and others that might be cited, it was held that the failure of the survivor to comply with certain statutory requirements, such as the signing of the inventory or his failure to sign the bond, together with the sureties, was but mere irregularity which did not invalidate the proceedings. In Stone v. Jackson, 210 S. W. 954, by our Supreme Court, it was held that a surviving husband without any statutory administration may pay community debts out of community property when such debts are barred by the statute of limitation. Also, in the case of Brewer v. Wall, 23 Tex. 585, 76 Am. Dec. 76, it was held that the power to sell community property includes also the power of the surviving spouse to sell the homestead of the family.

[5] While article 2238, quoted above, gives the right to the children of the deceased spouse to demand and have a partition of the estate and a distribution to them of their interests therein after the lapse of 12 months from the filing of the bond by the survivor, yet there is no statute which provides that in the absence of such a demand, the power theretofore given to the survivor to control, manage, and dispose of the estate shall cease and terminate at that time, nor is there any statute which provides when such power and authority shall terminate. In other words, articles 2226 and 2227 expressly give authority to the survivor after he has complied with the requirements of the preceding articles to control, manage, and dispose of the community property in the same manner as during the lifetime of the deceased spouse and without any limitation of duration of the power there given, and no article of the statutes provides for a termination of that authority except article 2238, and such termination under that article is made dependent upon a demand by the children for a partition and distribution of the estate. To say that the authority given the husband by the statutes and order of the probate court, to control, manage, and dispose of the community property of himself and deceased wife and ceased when he, as the community administrator, as well as for himself, executed the lease in controversy, would be to read into the statutes an exception or qualification which is not warranted by any statute, and which cannot be done. An attempt to follow such a course would be to enter into a field of speculation as to just how many years and under what conditions the statutory authority given to the survivor should continue, and without any standard for a determination of that question except the varying circumstances of different cases.

In the case of Drought v. Story, 143 S. W. 361, by the Court of Civil Appeals at San Antonio, it was held that a surviving husband, who, in the year 1868, qualified as an administrator of the community estate of himself and deceased wife, under the provisions of act of 1856, had the legal authority to convey land belonging to the community estate by deed executed by himself in the year 1900; no demand for a partition or distribution of the estate having theretofore been made by the heirs of the deceased wife. In other words, it was held that in the absence of a partition of the estate or some demand for a distribution among the children of their respective interests, the authority which was vested in the survivor by the order of the court appointing him as administrator continued until the date of the deed made by him, some 22 years later. A writ of error was denied by our Supreme Court in that case. While that decision was under the Acts of 1856, c. 123, that act was not materially different from the statutes in force in 1901, quoted above, so far as the question now under discussion was involved; practically the only difference appearing in the provision requiring the survivor to "file in the county court a full, fair and complete inventory and appraisement of all the community property of himself and his deceased wife, to be taken and recorded as in cases of administration, and to have the same force and effect in all suits between parties claiming under it. After which, without any administration or further action whatever in the probate court, he shall have the right to manage, control and dispose of said community property, both real and personal, in such manner as to him may seem best for the interest of said estate, and of suing and being sued with regard to the same, in the same manner as during the life of the wife."

The act of 1856 likewise gave any child the right to compel a partition and distribution of the community estate, as soon as he reached the age of majority; but it contained no other limitation of duration of the authority of the surviving husband to manage and dispose of the community property.

As an illustration of the strictness with which our statutes are construed and followed, we cite the following decisions, involving other statutes which are foreign to any issue in this case: Dandridge v. Masterson, 105 Tex. 511, 152 S. W. 166, in which it was held that where an appeal has been perfected but not prosecuted, as required by the statutes, the judgment of the trial court will be

affirmed upon a certificate presented by the appellee in compliance with the provision of article 1610, Rev. St. 1911, even though it should appear that the trial court was without jurisdiction to render judgment; the holding being that the appellate court has no discretion to refuse to follow the plain language of the statutes and that the "jurisdiction of the trial court is not an issue in this proceeding."

In Davis v. Howe (Com. App.) 213 S. W. 609, it was held that even a void deed or one procured by fraud will support the defense of the statute of five years' limitation if the deed on its face purports to convey title.

No contention was made either by pleading or proof that T. S. Speer acted in bad faith toward his children in the management of the community estate, or in the execution of the lease in controversy, thus leaving the proper construction of the statutes the only question involved.

From the foregoing conclusions, it follows that the judgment of the trial court in favor of the plaintiffs must be reversed and judgment must be here rendered in favor of appellants, and it is so ordered. But the rentals tendered into court by the depositary bank are decreed to the plaintiffs to be partitioned among them in proportion to the respective interests in the title to the property inherited from Mrs. N. P. Speer, as alleged in their petition.

Reversed and rendered.