CAREY et al. v. TEXAS PACIFIC COAL & OIL CO. et al. (No. 9444.)*

(Court of Civil Appeals of Texas. Fort Worth. March 26, 1921. Rehearing Denied April 30, 1921.)

1. Appeal and error ⬦930(3) — Issues not submitted to jury presumed found by court so as to support judgment.

Where case is submitted to jury on special issues, all issues presented in the pleadings not specially submitted must be deemed found by the court in such manner as to support the judgment, provided there be evidence to support such finding (Vernon's Sayles' Ann. Civ. St. 1914, art. 1985).

2. Appeal and error ⬦282—Motion for new trial unnecessary in case tried by court.

In trials before the court without a jury, it is not necessary to file a motion for a new trial as a predicate for an appeal.

3. Appeal and error ⬦722(1)—Sufficient that assignments of error are substantially the same as those in motion for new trial.

It is sufficient that the assignments of error are in substance the same as those presented by appellants' motion for a new trial.

4. Mines and minerals ⬦75 — Lessor held bound by practical construction given lease by accepting annual payments for extensions.

Where an oil lease for 10 years and as much longer as oil, etc., was produced in paying quantities recited a present consideration of $640 and stated that it was for 12 months from date, and that the lessee agreed to commence operation "within * * * hereof," and that, if he failed to do so, the lease should become void unless the lessee should give notice of his intention to keep it alive and pay for such extension "the sum of * * * dollars per year," and the lessee accepted $640 as rent for each of 3 years, she was bound by the

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused January 25, 1922.

practical construction placed thereon by her and the lessee.

**5. Mines and minerals ☞73 — Lease held a present lease effective until lessee required to commence drilling or pay rentals and subject to termination only for default in respect thereto.**

An oil lease for 10 years or as much longer as oil should be produced, which recited a present consideration of $640 and provided that it should become void unless the lessee commenced operations within one year or paid $640 a year for an extension, was a present lease effective until the lessee was required to commence drilling or pay rentals and subject to termination only for failure to begin such drilling or pay such rentals.

**6. Mines and minerals ☞77—Provisions for forfeiture in lease must be strictly construed.**

Provisions for forfeiture in oil leases are strictly construed, and the right of forfeiture must clearly appear.

**7. Homestead ☞114—Oil lease with provisions for annual payments held not executory contract to convey interest.**

Under an oil lease providing that it should be void if drilling was not commenced within one year unless the lessee paid $640 a year for an extension, the lessee had a valid option to continue the lease supported by a valid consideration, and, where a producing well had been drilled during the time for which rentals had been paid, the lease became fully effective and was fully executed without the necessity for any other instrument, and hence was not ineffective as an executory contract to convey an interest in a homestead.

**8. Homestead ☞142(2), 145—Rights do not pass to children, and surviving wife has right to forego claim.**

A homestead right upon the husband's death did not pass to the children by inheritance, and the surviving wife had a right to forego her claim of any possible homestead exemption.

**9. Mines and minerals ☞75—Option to continue lease by paying rental enforceable when supported by valuable consideration.**

Under an oil lease providing for termination if drilling was not commenced within one year unless the lessee paid a specified consideration for an extension, the option to continue the lease by paying the specified rental could be specifically enforced at the instance of the lessee when supported by a valuable consideration.

**10. Husband and wife ☞273(1)—Surviving wife authorized to accept rents under oil lease of community property after husband's death.**

Under an oil lease executed by a husband and wife on community property and providing that it should terminate if a well was not commenced within one year unless specified rentals were paid for an extension, the wife upon the husband's death, in the absence of any community administration, had legal authority, as representative of all interests in the community estate, to discharge the obligation by accepting the rents; and her acceptance thereof continued the lease in full force and effect as against the undivided interests of the children as well as her own interest.

Appeal from District Court, Stephens County; W. R. Ely, Judge.

Suit by Mrs. Virginia C. Carey and others against the Texas Pacific Coal & Oil Company and others, in which T. H. Harbin intervened. From a judgment against them, plaintiffs and the intervener appeal. Affirmed.

Gross & Zivley, of Mineral Wells, and Goree, Odell & Allen, of Forth Worth, for appellants.

W. J. Oxford, of Stephenville, and John Hancock, of Fort Worth, for appellees.

DUNKLIN, J. On November 15, 1915, J. A. Carey, joined by his wife, Mrs. Virginia C. Carey, executed an oil and gas lease to 640 acres of land in Stephens county to the Texas & Pacific Coal Company. The land was community property of the grantors, and they resided upon and claimed it as their homestead at the time the lease was executed. J. A. Carey died intestate, and there was no administration upon his estate nor any necessity therefor. When he died an undivided one half interest in the property passed to his children and the other half to Mrs. Carey, the surviving wife, under the statute of descent and distribution. V. S. Tex. Civ. Stats. art. 2469.

This suit was instituted by Mrs. Virginia C. Carey and the children of herself and her deceased husband against the Texas Pacific Coal & Oil Company, successor to the Texas & Pacific Coal Company, grantee in the lease, and the Sun Company, an assignee of the lessee to a part of the land, to cancel the lease. T. H. Harbin, assignee of plaintiffs to an interest in the land, intervened, adopted plaintiffs' pleadings, and prayed for a cancellation of the lease on the grounds alleged by plaintiffs.

From a judgment denying plaintiffs and intervener the relief sought, they have appealed.

A blank form was used in drawing up the lease. The following is a copy of the lease with unfilled blanks shown, and the italicized portions thereof were written in with pen and ink before the instrument was executed:

"This agreement, made this, the 15th day of November, 1915, by and between *J. A. Carey and wife*, of the county of *Stephens*, state of Texas, lessor, and *the Texas & Pacific Coal Company*, of *Thurber*, of the county of Erath, state of Texas, lessee, witnesseth:

"First. That the lessor, for and in consideration of the sum of *six hundred and forty dollars*, to me in hand paid, receipt of which is

hereby acknowledged, *do* hereby demise, lease and grant unto said lessee, his heirs, assigns, all the oil, gas, and other mineral in and under the following described tract of land, and the exclusive right to prospect and operate thereon for oil, gas, and other mineral, together with the right of way, right to lay pipe lines over, to use water, gas, and oil to operate said property, taken from said premises, to erect derricks, to build tanks, and to place all necessary machinery or structures on said premises and to remove all property at any time that may be placed on said land during the term of this lease.

"Second. Said tract of land being situated in the * * * survey in *Stephens* county, Texas, and bounded and described as follows, to wit: S. ½ of section 52, block 5; N. ½ of section 3, block 6.

*"In the event of the lessee failing to pay to the lessor in advance on ten days' notice in writing by lessor the ground rent due under the terms and provisions hereof, that this lease shall be null and void and the lessor shall be released from all liabilities* mentioned— and containing 640 acres, more or less.

"To have and to hold the same unto the lessee, his heirs and assigns, for a term or period of ten years from the date hereof, and as much longer thereafter as oil, gas, or other mineral is produced in paying quantities thereon, or until said lessee is satisfied that oil, gas, or other mineral in paying quantities cannot be found or produced from said premises.

"Third. Said lessee hereby agrees to commence operation within * * * hereof, and the said well to be located on the said tract of land or on one of the adjoining original surveys, the location of said well to be determined by an expert; said location and beginning operation on the said location shall constitute a commencement as mentioned in this contract.

"Fourth. If the lessee fails to commence operation within the specified time, this lease shall become null and void, unless the said lessee shall give written notice to the lessor of his intentions to keep alive this contract, and shall pay said lessor for such extension of time the sum of * * * dollars per year, said payment to be made to the lessor or deposited to his credit in the * * * bank of * * * Texas.

*"The consideration mentioned in this lease is for 12 months from date.* ·

"Fifth. And it is further agreed that the lessor, in the consideration of this lease, shall deliver free of cost to the lessor in the pipe lines or tanks, *one, one-eighth* of all the oil *and 10% of the field price* of gas produced, saved and sold from the above-described premises, and in case the lessee fails to find oil or other mineral in paying quantities, but should develop a good supply of water, at the option of the lessor said well may become the property of the lessor by paying the lessee the cost of all the necessary casing and screen to complete the said water well.

"Sixth. It is hereby agreed that the said lessee shall have the right to terminate this contract at any time after being satisfied that oil or other minerals cannot be produced in paying quantities, by giving ten days' notice in writing, and lessee is hereby authorized to sell, sublet or assign the whole or any fractional part of this lease at any time during the term

of this lease. This is a lease for purposes and of property above described."

[1] The trial was before a jury on special issues, but only three issues were submitted to them, and the findings thereon were as follows:

(1) At the time she executed the lease, Mrs. Virginia C. Carey understood that it was to run for 10 years, and not for one year only.

(2) The notary public who took her acknowledgment examined her privily and apart from her husband, as required by the statutes.

(3) Since the execution of the lease the lessee has not given to the plaintiffs notice of its intention to keep the same alive.

Those issues were tendered by plaintiffs in their pleadings, and the findings of the jury on the first two were adverse to their allegations, while the finding on the third sustained their allegation as to that issue. None of the parties requested the submission to the jury of any other issues; hence all issues presented in the pleadings must be deemed as found by the court in such manner as support the judgment, provided there be evidence to support such finding. V. S. Tex. Civ. Stats. art. 1985; Mechanics' & Traders' Ins. Co. v. Dalton, 189 S. W. 771.

[2, 3] Appellants filed a motion for new trial, which was overruled, and also filed in the lower court separate assignments of error, which are copied in their briefs and urged here. None of those assignments challenge the correctness of the findings of the jury, but all of them are addressed to the findings and conclusions of the trial judge. Appellees object to a consideration of any of them on the alleged ground that they are not the same as those embodied in the motion for a new trial. In trials before the court without a jury it is not necessary to file a motion for a new trial as a predicate for an appeal. Aside from the question whether or not, under that rule, complaint may be made of rulings of the trial judge when only a portion of the issues are submitted to the jury, without urging assignments to such rulings in a motion for new trial, we believe the assignments here are, in substance, the same as those presented in appellants' motion for new trial, which, in any event, was all that was required of them. Hess & Skinner v. Turney, 109 Tex. 208, 203 S. W. 593.

The death of J. A. Carey occurred on August 12, 1916, which was less than one year from the date of the lease, to wit, November 15, 1915. After his death, Mrs. Carey accepted from the lessee $640 rentals on the entire tract for each of three years, the first year beginning November 15, 1916, and ending November 15, 1917, the second beginning November 15, 1917, and ending November 15, 1918, and the third beginning November 15, 1918, and ending November 15, 1919, all of

said payments being made on or before their respective due dates.

This suit was filed April 30, 1919. On or about March 15, 1919, more than one month preceding the filing of the suit, a well was begun on the land which was completed on May 29, 1919, more than five months prior to the expiration of the three years for which Mrs. Carey had accepted rentals. From the date of completion to November 30, 1919, it produced 52,781.59 barrels of oil, which was worth $2.25 per barrel, or in the aggregate $119,109.56. The expense incurred up to April 30, 1919, in drilling operations was approximately $39,000; no showing of amount of additional expense for completion. It does not appear that any of the plaintiffs or the intervener has accepted any part of the production as royalties provided for in the lease.

The defendants alleged, in effect, that when the lease was executed the understanding and oral agreement between all the parties thereto was the same as would have been evidenced by paragraph 3 of the lease, if the blank there occurring had been filled with the words "one year from the date"; and the blank between the words "of" and "dollars" appearing in paragraph 4 of the lease had been filled with the figures "640." It was further alleged, in effect, that after the death of her husband plaintiffs and the lessee all so interpreted the meaning and legal effect of the instrument and so bound themselves by accepting the rentals mentioned for three successive years thereafter, and that by such action on their part they waived their rights to complain of the uncertainties in the written lease in the respect stated; and said facts were also pleaded as an estoppel against plaintiffs and intervener.

The plaintiffs and intervener also pleaded substantially the same agreement and understanding between the parties at the time the instrument was executed, and, since all parties insist that such was the agreement, we will consider and give effect to the instrument the same as if the blanks referred to had been filled in the manner mentioned in defendant's plea. The purpose of plaintiffs and intervener in alleging that such was the understanding between the parties was to have a reformation of the instrument to serve as a basis for cancellation.

[4-6] In G. H. & S. A. Ry. Co. v. Johnson, 74 Tex. 256, 11 S. W. 1113, the Supreme Court, in considering a contract of indefinite and ambiguous terms, said:

"The language of the contract being doubtful, the practical construction deliberately given it by both parties should control its interpretation."

We perceive no reason for exempting Mrs. Carey from the operation of that rule, and the evidence warranted a finding by the court that she was bound by the construction of the lease so adopted by her and by the les-

see. The express provisions of the instrument show clearly that the cash consideration paid made it a present lease, effective until the lessee was required to commence drilling operations, or to pay rentals in lieu. thereof in order to continue the lease in force. The failure to begin such drilling operations and the failure to pay rentals in lieu thereof were the only conditions which would terminate the lease, and the performance of both was made optional with the lessee. In the habendum clause in the second paragraph of the instrument it is stated that the lease is for 10 years and as much longer thereafter as oil, gas, or other mineral is produced in paying quantities, or until the lessee is satisfied that it cannot be found in such quantities. The rule is that provisions for forfeiture are strictly construed, and that the right of forfeiture must clearly appear. Decker v. Kirlicks, 110 Tex. 90, 216 S. W. 385.

[7, 8] Since, as between the lessee and the community estate of J. A. Carey and wife, the lessee had a valid option contract to continue the lease for the time stipulated by paying rentals at the rate of $640 per year, which contract was supported by a valuable consideration, and since, acting upon that contract, they elected to drill a well which produced oil in paying quantities during the time for which such rentals had been paid, the lease became fully effective as soon as the well was completed. After that time it was no longer a mere option to acquire a lease. While up to the time the well was drilled the contract was executory on the part of the lessee, at its option, it was fully executed by the lessors at the beginning, and so soon as oil was found the interest stipulated for by the lessee passed to it without the necessity for the execution of another instrument by the lessors. Under such circumstances there is no merit in the contention that the lease was never effective by reason of the fact that the tract of land included the homestead of the lessors, and that an executory contract to convey an interest in it cannot be enforced. Stitzle v. Evans, 74 Tex. 596, 12 S. W. 326; National Oil & Pipe Line Co. v. Teel, 95 Tex. 586, 68 S. W. 979. Furthermore, the homestead right did not pass to the children by inheritance, and after the death of their father she had the right to forego her claim of any possible homestead exemption. Brewer v. Wall, 23 Tex. 585, 76 Am. Dec. 76.

[9] It is a familiar rule that an option contract of the character of the lease in controversy, when supported by a valuable consideration, can be specifically enforced at. the instance of the promisee. 25 R. C. L. pp. 237 and 238.

[10] The record shows conclusively that there was no administration of the community estate in the probate court under the statutes; that there were no community

debts owing when J. A. Carey died; that none of the Carey children have ever received any part of the rentals paid to their mother after the death of their father; that they never gave to their mother authority to receive any of the rentals in their behalf, nor to release the lessee from a performance of any condition necessary to avoid a forfeiture of the lease with respect to the undivided interest in the land which they had inherited from their father. But the stipulation in the lease that J. A. Carey and wife would accept the stipulated rentals from year to year in lieu of the beginning of drilling operations, and that the payment of the same would continue the lease in force, was an obligation binding upon their community estate, and continued in force after the death of J. A. Carey. Mrs. Carey, as the survivor of the marital relation, in the absence of any community administration, had legal authority, as the representative of all interests in the community estate, to discharge that obligation by accepting the rents, to the same extent as she had authority to sell community property to pay community debts. The leading case of Stramler v. Coe, 15 Tex. 211, which was cited with approval by our Supreme Court in Stone v. Jackson, 109 Tex. 385, 210 S. W. 953, clearly sustains that conclusion. And the same doctrine was announced in unequivocal language in the following cases: Primm v. Barton, 18 Tex. 206; Brewer v. Wall, 23 Tex. 585, 76 Am. Dec. 76; Long v. Walker, 47 Tex. 173; Garnett v. Jobe, 70 Tex. 696, 8 S. W. 505; Hilburn v. Harris, 2 Tex. Civ. App. 395, 21 S. W. 572.

For the reasons indicated above, we conclude that the acceptance of rentals by Mrs. Carey, after the death of her husband, had the legal effect to continue the lease in full force and effect as against the undivided interests in the land which her children inherited from their father, as well as against her own undivided interest, and that the judgment in favor of the defendants as against the suit of the plaintiffs and the intervener must be affirmed, irrespective of other reasons for affirmance advanced by appellees, the merits of which it will be unnecessary to determine.