FREDERICKA CORDIER ET AL. v. RUFUS K. CAGE.

1. ADMINISTRATION OF COMMUNITY PROPERTY.—Under the act of August 26, 1856, upon filing an inventory as provided, the survivor can convey the real estate of such community. It is the inventory under said act, and not the appraisement, which gives the right to sell.

2. HOMESTEAD—SAME.—That community property is homestead will not prevent its sale under said law.

3. SAME.—Mere omissions in the inventory, or irregularities in the proceedings, will not vitiate a sale made of such property, and which is inventoried.

4. SAME.—Heirs and creditors could have omissions in the inventory corrected; a purchaser would not be affected by them.

5. EXECUTION OF DEED—Where a deed has been made by the party having the lawful authority to sell, the use by such person of a name different from that by which the party is usually known will not vitiate the deed.

6. CONSTRUCTION OF STATUTE.—The act of August 26, 1856, commonly called the marital-rights law, was designed to afford a simple means of administering community property, and should be liberally construed.

APPEAL from Harris. Tried below before the Hon. James Masterson.

Fredericka and Albert Cordier sued R. K. Cage for a part of a tract of 61½ acres of land bought by Frederick Stahl, the father of Fredericka, claimed to have been community property and the homestead of the parents of plaintiff.

The defendant, Cage, claimed the land by purchase from Mary Stahl, the widow surviving, and who had filed an inventory of the community property.

The questions presented by the appeal are as to the ability of the widow to sell the homestead and as to the effect of irregularities in proceedings under the act of 26th August, 1856. The details of the case are given in the opinion.

*W. P. Hamblin,* for appellants.

*W. S. Oldham, jr.,* for appellee, cited Wright *v.* Hays, 10 Tex., 130; Fullerton *v.* Doyle, 18 Tex., 13; Wood *v.* Wheeler, 7 Tex., 13; Tadlock *v.* Eccles, 20 Tex., 792.

IRELAND, ASSOCIATE JUSTICE.—The widow of Stahl returned an inventory and appraisement of the community property in 1859, which she swore to, appraising the property in controversy at $350.

It is objected by appellant that there should have been appraisers appointed to make the appraisement, as in ordinary administrations, and it is true that this would have been the better course. The law, (Paschal's Dig., art. 4648,) being the amendatory marital-rights act of 26th August, 1856, does not say who shall appraise, or how the appraisers shall be appointed, or whether they shall be appointed at all. It might be admitted that the appraisers should be appointed by the County Court or the chief justice, and that this was the intention of the Legislature; still, would the departure from that mode, as in this case, vitiate sales made by a survivor?

The property in this case is land, and it is the inventory and not the appraisement that constitutes the substance. This case is to be distinguished from Kirkland *v.* Little, 41 Tex., 456. There it was the inventory that was wanting, and it was under the law of 1870.

The survivor appears to have acted under the supervision of the chief justice. She filed a petition to the County Court stating the fact of her husband's death, and giving amount of community property owned by them at the death of her husband. Her prayer was granted by the chief justice, and she thereupon returned the inventory and appraisement. There was an effort made by appellant on the trial to show that there was some property not embraced in the inventory, and the fact is that she signed the deed to appellee, using the christian name of "Sophia," and this too is urged as a reason for annulling her deed.

The purchaser was not chargeable with whatever omissions may have existed in the inventory; that is, whether it embraced all or only a portion of the property. Heirs and creditors had the right to complain to the court and have the correction made at any time.

It is not believed that the informality in the inventory is fatal to the rights of the purchasers. As before stated, the widow had proceeded by petition asking to control the

community estate.   Her prayer was granted by an order of the court regularly entered on the minutes of the court. The inventory and appraisement was returned and received by the court, and whatever defects existed in the mode of procedure in this case must be held mere irregularities that cannot affect the rights of the purchaser.   That the property was the homestead can make no difference in this case, the property being community and administered under the act of 1856.

In the plaintiff's petition it is admitted that the party who sold was the widow of F. Stahl, though it is alleged that she improperly sold under the name of "Sophia," when in fact her name was Mary.

When it thus appears that a deed to real estate was in fact made by the person having lawful authority to sell, it is not believed that the use of a name unusual or formerly unknown as a means to designate the person could vitiate the deed.

In the case of Denson *v.* Holt, *supra*, we decided that the act of 1856 was intended and designed by the Legislature to afford an easy and speedy mode of managing and controlling community estates, and to allow a survivor to manage, sell, or dispose of it, relieved of the trammels thrown around such estates prior to that time, and that it was entitled to a liberal construction.

The wisdom of the law of community has not demonstrated itself to some statesmen and jurists ; nor can it be denied that its provisions have been a fruitful source of litigation in this country.   There is no pretense in this case that there was any unfairness or fraud in the transaction.   It is not an unimportant feature of this case that the wife paid nearly one-half the purchase-money for the property after the death of her husband.   There is no error in the record for which the judgment should be reversed, and it is therefore affirmed.

                                                  AFFIRMED.