## E. W. BATES v. R. M. THOMPSON.

### (Case No. 1720.)

1. SURVEYOR'S FEES.— The owner of land certificates who employs and pays a deputy surveyor for the work of actually surveying the land on which the certificates are located, and who defrays all his expenses, is not liable to the county surveyor whose deputy has been thus employed and paid, for the fees for surveying, there being no contract between the deputy and principal surveyor in regard thereto.

2. SAME.— Under such circumstances the principal surveyor, who inspected, filed and recorded the field notes, is entitled to one dollar fees for each set of field notes.

3. SAME.— Any contract with a county surveyor, express or implied, for the payment of larger fees than are prescribed by the statute, is void.

4. SAME.— The county surveyor is bound to make out and certify correct sketches or plats of surveys of land certificates, and file the same in the general land office, or deliver them to the owner of the certificates, before he is entitled to his fees for inspecting, filing and recording the field notes of such certificates.

APPEAL from Travis. Tried below before the Hon. John W. Robertson, special judge.

Thompson brought suit in the district court of Travis county against appellant, who was the surveyor of Pecos county, for the possession of four hundred and eighty-seven land certificates and nine hundred and seventy-four sets of field notes of surveys made

by virtue of those certificates, which certificates and field notes appellant had in his possession in Travis county.

On the 18th day of November, 1881, plaintiff sued out a writ of sequestration, causing the seizure of the papers sued for and subsequently replevied them. Plaintiff claimed the right to these certificates and field notes on the ground that he had tendered to defendant $1,100, his full legal fees for services as surveyor; but that defendant refused delivery, claiming exorbitant and illegal fees. That he had formerly paid $317 on defendant's fees, which was a credit, but that in making tender he waived said credit. That he had paid one Barton, a deputy surveyor, for the field work in making said surveys, and that defendant was only entitled to fees for filing, approving and recording the field notes.

Defendant answered that he was entitled to fees as surveyor both for field work done by his deputy and for filing, approving and recording, in the sum of $26 for each of the certificates, which fees were unpaid except $317. He set up a lien on the certificates and field notes for his fees, and alleged damages by reason of the seizure of the papers by plaintiff.

Judgment in favor of defendant against plaintiff for $662 and costs of suit prior to the tender of fees made on the 18th day of November, 1881, but staying execution until defendant should sign certain plats of surveys tendered by plaintiff to be filed in the general land office.

Upon motion of plaintiff this judgment was reformed so as to give defendant absolute judgment for $662 and all costs.

It should also be stated that appellee alleged that the certificates involved in this case were located on lands in Pecos county, Texas; that appellee furnished the deputy surveyor and gave his bond on his appointment by appellant; that appellee, through his own superintendent and agents, did all of the work in locating said certificates and making the surveys in controversy on the ground, and paid the deputy surveyor and the superintendent and hands who performed the work, and furnished the outfit and provisions to accomplish said work at a cost of $490 per month for the time he was engaged; that he paid appellant $312 on the work involved in this suit, and prayed that same be allowed him as a credit.

A jury being waived, the following facts were found by the court:

1. The defendant, E. W. Bates, is now, and has been since November, 1880, surveyor of Pecos county.

2. The plaintiff, R. M. Thompson, located certain alternate land

certificates in Pecos county, filing the same in the office of defendant as surveyor, as follows: In January, 1881, forty certificates; May 19, 1881, ninety-five certificates; May 23, 1881, three hundred and twelve certificates; June, 1881, forty certificates. Total, four hundred and eighty-seven certificates.

3. Plaintiff held said certificates and located the same as agent for owners. By his contract with owners he was to receive a money fee for locating a portion and a locative interest in lands located by virtue of remainder.

4. On December 10, 1880, it was agreed between plaintiff and defendant that if plaintiff should locate as many as five hundred alternate certificates in Pecos county, and furnish a suitable person to be appointed deputy surveyor to make such surveys, and make the bond of such deputy, and furnish printed record books for recording the field notes, and pay all the expenses of making the surveys, that defendant would charge plaintiff a fee of $5.50 for filing, signing, recording and approving the field notes of the surveys located by virtue of such certificate. It was also agreed that if plaintiff should locate as many as one thousand certificates on like conditions, the fee should be $5 on each certificate.

The terms were at the time accepted by plaintiff, and subsequently some surveys were made by plaintiff and the fees paid defendant under the agreement. But this agreement was abandoned by both parties before any of the files and surveys in controversy in this suit were made.

5. There was no express contract fixing the amount of fees to be charged by defendant on the locations in controversy.

6. On March 29, 1881, defendant gave plaintiff notice that his fees in the forty certificates filed in January, 1881, and in subsequent locations would be $11 for each certificate, unless plaintiff should, before the middle of August, 1881, file as many as two hundred certificates, in which event defendant's fees should be $10 for each certificate.

To this plaintiff, on April 4, 1881, made written protest, saying that the fees proposed to be charged were in excess of the contract previously agreed upon, and greater than that allowed by law for filing and approving field notes, but consented to pay the same if demanded. On May 19, 1881, Horace Thompson, agent of plaintiff, filed ninety-five of the certificates in controversy, and at that time the subject of fees was not mentioned.

On May 23, 1881, plaintiff, by same agent, filed with defendant three hundred and twelve of the certificates in controversy. De-

fendant then notified said agent that his fees for the one hundred and thirty-five certificates previously filed would be $12 each, and for the three hundred and twelve certificates and for all subsequent files his fees would be at rate of $16 for each certificate. Plaintiff's agent notified defendant that he had no authority to make any contract with reference to fees, but that he was prepared to pay the filing fees. Defendant at first refused to file the three hundred and twelve certificates and record the locations, until the amount of fees could be agreed upon, but upon plaintiff's agent paying him $312 for filing fees the same were filed and locations entered.

Plaintiff was notified through his agent of the changes proposed to be made by defendant and made no further protest.

Plaintiff proceeded to complete the surveys, and nothing transpired in reference to defendant's fee until after the surveys had all been made and the field notes filed and approved by defendant.

7. Defendant, on or about December 10, 1880, at the request of plaintiff, appointed H. C. Barton deputy surveyor of Pecos county, and plaintiff made his bond as such deputy, and the same was approved by the county commissioners' court of Pecos county. Barton did no surveying, as deputy, for any one except plaintiff, and was wholly subject to plaintiff's orders.

8. The surveys in controversy, nine hundred and seventy-four in number, made by virtue of the four hundred and eighty-seven alternate certificates described in the pleadings, were made by said Barton as deputy surveyor of Pecos county under said appointment. Plaintiff furnished all the chain-bearers and other necessary hands, all equipments for making said surveys, and paid all the expenses of making same, including compensation to said deputy, Barton, at the rate of $30 per month. Barton made out and certified to all the field notes, as deputy surveyor of Pecos county, and filed same in defendant's office as county surveyor.

9. Defendant, as surveyor of Pecos county, examined, approved and recorded the field notes made and returned by Barton as deputy surveyor, and certified to the correctness of the same as required by law. The record books were furnished by plaintiff.

10. There was no contract or understanding between defendant and Barton as to the fees for the work done by Barton in the field.

11. Defendant did no part of the work except to examine, approve and record the field notes made by the deputy, Barton, and to certify to their correctness.

12. Defendant has not prepared and certified the sketches or plats of said surveys as required by law.

13. The distance actually run by said Barton in making said surveys was six hundred and nineteen lineal miles.

14. Said surveys were all made by said Barton, and the field notes filed in the defendant's office between the 1st of March and the last of October, 1881.

15. The actual and necessary expenses incurred and paid by plaintiff in making said surveys in the field, including the compensation paid Barton as deputy, was $1,680.

16. The sketches and plats produced by plaintiff in court, designated A, B, C, D, are correct sketches and plats of said nine hundred and seventy-four surveys as actually made on the ground.

17. The petition in this case was filed, and this suit commenced November 17, 1881, at the time said certificates and field notes were in defendant's possession in Austin. No tender of fees had then been made and no demand for possession of papers.

On November 18, 1881, the defendant, at the solicitation of plaintiff, made out his account and presented the same to plaintiff for payment for filing, recording and signing field notes on one hundred and thirty-five certificates at $12 each, $1,620; and on three hundred and fifty-two certificates at $16 each, $5,632. Total fees claimed, $7,252, less a credit of $317. Plaintiff declined to pay.

19. November 18, 1881, plaintiff tendered defendant $1,100 in payment of his fees and demanded possession of the papers in controversy. Defendant declined to accept the money tendered, and refused to give possession of the papers. Plaintiff immediately sued out a writ of sequestration.

20. The certificates, field notes and other papers were seized by the sheriff by virtue of said writ of sequestration. Defendant having failed to replevy the same, plaintiff subsequently replevied them and filed them in the general land office, where they now are.

21. Defendant has failed to prove that he has sustained any damages in consequence of the suing out and levy of said writ.

22. Plaintiff paid defendant $312, amount of his fees, May 23, 1881.

On the facts thus found, the following conclusions of law were announced:

1. That the defendant is only entitled under the law to fees at the rate of $1 for inspecting, filing and recording the field notes of each survey.

2. That the defendant, having done no part of the field work of making said surveys, is not entitled to any fees therefor.

3. That plaintiff, having paid all the expenses of making said surveys, and having paid said deputy, Barton, for his services, is only liable to defendant for the fees for inspecting, approving and recording the field notes.

4. That the fees are due, and can only be demanded for the work actually done.

5. That the fees demanded by defendant are greater than are allowed by law.

6. That any contract by plaintiff, expressed or implied, for the payment of fees greater than are allowed by law is void.

7. That defendant is bound to make out and certify correct sketches or plats of said surveys, and file same in the general land office or deliver the same to plaintiff, before he is entitled to said fees.

8. That plaintiff is liable for all costs incurred up to the time the tender was made, and defendant for all costs subsequent to the tender.

*Walton & Hill*, for appellant, cited: R. S., arts. 3834, 3837, 3840, 3842, 3843, 3853, 3908 (9), 3917. As to fees, R. S., arts. 2, 406; Coveney *v.* Tannahill, 1 Hill, 21 (S. C., 37 Am. Dec., 286); Tappan *v.* Brown, 9 Wend., 175. For the rule as to fees at common law, see Gibson's Case, 1 Bland Ch. (Md.), 138 (S. C., 17 Am. Dec., 261–2); Hoke *v.* Henderson, 4 Dev., 1 (S. C., with note, 25 Am. Dec., 690).

Delany, J. Com. App.— Of the thirty-three assignments of error the greater part have been abandoned, and of those which have not been abandoned only a few will call for discussion.

We are not prepared to say that the court erred in its findings of fact. Considering the uncertainty and conflict of evidence which the record exhibits, those findings are perhaps as well sustained as any which might be substituted in their place.

The principal and most difficult question in the case is to determine the fees to which appellant was entitled in the premises. And it presents this peculiarity: that although counsel for appellant strongly insist that the amount awarded to him by the court was too small, yet they seem uncertain as to the amount which he ought to receive, and as to the ground upon which they would place his right to recover any particular sum.

Sometimes they seem to rely upon the contract of December 10, 1880, which would give the defendant $5.50 for each certificate filed. Then they insist upon an implied contract, which would give the

defendant for some of the certificates $11, for others $12, and for others $16.

Again, they suggest that appellant was entitled to all the fees which accrued in the progress of the work — that is, to the office fees for signing and recording field notes, and also to the fees for work done in the field. This would give him $2 for each certificate; that is, $1 for signing and recording each set of field notes, and $3 for each lineal mile actually run in making the surveys.

The plaintiff, however, paid all the expenses of the field work, including the sums paid to the deputy who made the surveys.

Upon this state of the case it is suggested by appellant's counsel, that, as the plaintiff did not plead the expenses of the surveys in set off against the defendant's claim for legal fees, the latter is entitled to demand full fees, both for office work and for work in the field, without any regard to the expenses.

In the account which the defendant presented to the plaintiff on November 18, 1881, after all the work was done, he claimed a balance of $6,935.

In making out that account he does not seem to have regarded himself as entitled to claim any fees for work done in the field. His charges are for "filing, recording and signing field notes of the following described land scrip." For one hundred and thirty-five certificates he charges $12 each, and for all the others $16 each.

On the trial below the court limited the right of the defendant to the fees accruing from the work performed by him — that is, to $1 for signing and recording each set of field notes; and, as he had done no work in the field, it was held that he had no claim upon the plaintiff for that work.

Was this ruling correct? In our opinion it was correct as between the parties before the court, and as an adjudication upon the facts of this case. This is not a contest between the principal surveyor and his deputy as to their respective interests in the fees and perquisites of the office.

The statute which prescribes the fees of surveyors gives them all to the county and district surveyors (R. S., 2406). It does not even mention the deputies; and yet we think they are included in the general names as well as the principal surveyors.

In the first place, the statute just quoted is almost a literal copy of the thirteenth section of the act of March 10, 1848, fixing the fees of office. Pasch. Dig., 3823.

That section, like the present statute, overlooked the deputies and speaks of the surveyor only. But the first section of the same act

(Pasch. Dig., 3811) recognized the rights of deputy surveyors, as well as of the principals, to fees for the work done by them.

From our earliest history the duties of these officers have been, to a considerable extent, under the direction of the commissioner of the general land office, and the work in the field has generally been done by the deputies. Peacock *v.* Hammond, 6 Tex., 544; Lewis *v.* Durst, 10 Tex., 398.

The statutes directing the appointment and prescribing the duties of deputy surveyors plainly show that they are still required to do the field work. R. S., arts. 3840–42. And we have no statute which makes it the duty of the principal surveyor to do such work.

The act of December 20, 1837, provides that the county surveyor may do the work of a practical surveyor, and may also perform all the duties required of a deputy; but it does not require him to do so. This provision is copied into the Revised Statutes, art. 3843.

If we turn now to the act regulating the fees of surveyors (R. S., 2406), it is easy to see that, in the absence of any agreement on the subject, the fees for field work would properly fall to the deputy surveyor.

It is not necessary, however, that we should express any opinion as to the relative rights of the two in a contest between themselves.

In this case, however, as there was no agreement between the parties, and as the services of the deputy as well as the other expenses were paid for by the plaintiff, we do not think that the court erred in deciding against the claim of the defendant.

The remaining points seem not of sufficient importance to demand a discussion.

Our opinion is that the judgment should be affirmed.

AFFIRMED.

[Opinion adopted March 28, 1884.]