SEALEY et al. v. MUTUAL LAND CO. et al.*
(No. 8305.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 22, 1916. Rehearing Denied March 4, 1916.)

1. HUSBAND AND WIFE ⊂⊃276(6)—COMMUNITY PROPERTY—AUTHORITY TO CONVEY.

Under Act Aug. 26, 1856, §§ 2, 3, 7 (see 4 Gammel's Laws, p. 469), making it unnecessary for a surviving wife to administer on the community property of herself and her deceased husband, and authorizing her to manage, control, and dispose of the property as may seem best for the interest of the estate after filing in the county court an inventory and appraisement of all the community property, where an inventory and appraisement of community property were filed with the knowledge and authority of a surviving wife and in her behalf, though it was not signed nor verified by her, but by third parties, it was sufficient to authorize her to convey full title to land constituting part of the community property.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1038, 1039; Dec. Dig. ⊂⊃ 276(6).]

2. RECORDS ⊂⊃17(7) — PRESUMPTIONS — CONVEYANCES.

Where the records of a county court have been destroyed, it will be presumed, in support of a conveyance by a surviving wife of community property where there has been filed an inventory of the community property not signed by her but by third parties, that the wife made application to the court for the appointment of appraisers and that their appraisement was duly approved by the court.

[Ed. Note.—For other cases, see Records, Cent. Dig. §§ 33, 43; Dec. Dig. ⊂⊃17(7).]

Error from District Court, Tarrant County; R. H. Buck, Judge.

Action by Joella Sealey and others against the Mutual Land Company and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

M. D. Gano and H. C. Jarrel, both of Dallas, and Lattimore, Cummings, Doyle & Bouldin, of Ft. Worth, for appellants. McLean, Scott & McLean and J. C. Terrell, all of Ft. Worth, for appellees.

CONNER, C. J. Joella Sealey and others, claiming as heirs of Samuel Sealey, deceased, instituted this suit to recover an undivided one-half interest in a tract of land situated in Tarrant county, described as a portion of the Daniel Dulaney survey patented by the state of Texas to E. M. Daggett as assignee.

The plaintiffs suffered an adverse judgment in the court below and have prosecuted this writ of error.

The defendants claimed by virtue of a regular chain of conveyances emanating from and under a deed from Jane C. Sealey, surviving wife of Samuel Sealey, to R. E. Maddox in 1883. The defendants also claimed under the five and ten years' statute of limitations. Omitting facts unrelated to the question upon which we have based our conclusion, it appears that the survey of which the land in controversy is a part was patented by the state of Texas to E. M. Daggett in May, 1856; that thereafter, on the 23d day of January, 1863, E. M. Daggett by deed duly executed conveyed said land to David Wiggins; that thereafter, on the 12th day of April, 1867, David Wiggins and wife, Marry Wiggins, by deed duly executed, conveyed said land to Samuel Sealey. Samuel Sealey died intestate in Tarrant county on March 11, 1869, leaving as his sole heirs and survivors the plaintiffs in this case and his wife, Jane C. Sealey. The following inventory and appraisement was offered in behalf of the defendants, and it is admitted that the land therein referred to includes the land in controversy, viz.:

"Inventory and appraisement of the community property of Sam Sealey, deceased, and Jane C. Sealey, his surviving wife, there being no individual property belonging to either of them.

| | |
|---|---|
| 540 acres of land at $2.75 per acre.. | $1,485.00 |
| 14 yoke of work oxen, yokes and chains, $40.00.................... | 560.00 |
| 1 iron axle wagon.................. | 100.00 |
| 2 wooden axle wagons, $75 each.... | 150.00 |
| 1 buggy and harness............... | 100.00 |
| 18 head stock cattle, $5 each....... | 90.00 |
| 1 mule............................ | 65.00 |
| 1 mare and yearling colt........... | 65.00 |
| 1 gray mare, old.................. | 20.00 |
| Household and kitchen furniture.... | 200.00 |

"State of Texas, County of Tarrant.

"Personally appeared before me, the undersigned authority, W. F. Adams and F. L. Hartman, who, being duly sworn by me, says that the foregoing is a true and correct appraisement of all the property exhibited to us by Jane Sealey, surviving wife of Sam Sealey, deceased.
"W. F. Adams.
"F. L. Hartman.

"Sworn and subscribed to before me this the 29th day of May, 1869.
"A. G. Walker, Co. Clk.,
"By H. A. Powell, Deputy."

This instrument was indorsed:

"Sam Sealey, deceased. Estate of Inventory and Appraisement. Filed June 2nd, 1869. Examined and approved, B. F. Barkley, JCCTCT."

The deed from Jane C. Sealey to R. E. Maddox, under whom the defendants claim, purported to convey the entire interest in the land therein described, including that in controversy, and the foregoing inventory and appraisement was offered by the defendants in error to show the qualification of Jane C. Sealey, as the community survivor, to convey full title as she purported to do in the deed to Maddox. It is admitted that:

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

184 S.W.—68 *Application for writ of error pending in Supreme Court.

"If Mrs. Sealey was duly qualified as survivor of the community estate of herself and deceased husband, this deed (the deed to Maddox) conveyed the title to the land in controversy, and defendants, who deraigned title through R. E. Maddox, are entitled to judgment."

The court admitted the inventory over objection of plaintiffs in error to be hereinafter indicated, and, among other special issues, submitted to the jury the following:

"Did Mrs. Jane Sealey, surviving widow of Samuel Scaley, file the instrument purporting to be an inventory and appraisement of the community estate of herself and deceased husband, Samuel Sealey, and purporting to be signed by W. F. Adams and F. L. Hartman, as appraisers?"

To which the jury answered:

"Mrs. Jane Sealey did not personally file, but authorized to be filed, the inventory."

It is thus seen that the question of whether Jane C. Sealey was qualified to act as the community survivor in the disposition of the community property of herself and Samuel Sealey, deceased, is a vital one, irrespective of questions relating to the issues of five and ten years' limitation under which the defendants in error also claim, and we will now address ourselves to the solution of the vital question so presented.

It was shown that the courthouse in Tarrant county and the records were destroyed by fire on March 29, 1876, with the single exception of "Book G" of the probate minutes, from which the inventory and appraisement in question was copied. It was also shown that W. F. Adams and F. L. Hartman, who subscribed to the inventory and appraisement, were, at the time of Samuel Sealey's death, near neighbors and confidential friends of the family; that on the 19th day of August, 1873, Jane C. Sealey conveyed to Wiley Harris a portion of the Daniel Dulaney survey, which conveyance recites:

"That I, Jane C. Sealey, surviving widow of Samuel Sealey, deceased, having filed an inventory in accordance to law, for and in consideration of eleven hundred and eighty dollars gold paid to me by Wiley Harris," etc.

This deed was duly acknowledged before the proper clerk of Tarrant county, who certified that Jane C. Sealey was well known to him and that she appeared before him and acknowledged that she "signed, executed and delivered said deed for the purposes and consideration therein stated." Plaintiffs in error objected to the inventory, and here contend that it was void and unavailing for the purposes for which it was offered, because:

"(1) That said inventory and appraisement was not prepared and filed by the said Jane Sealey. (2) That said inventory and appraisement was in fact prepared and filed by W. F. Adams and F. L. Hartman, parties unknown so far as the records disclose. (3) That said Jane Sealey was not a party to said record, or to the preparation and filing of said inventory and appraisement. (4) That the court has had no supervision over the person of said Jane Sealey by virtue of which the preparation and filing of said inventory could have vested in her any authority to dispose of the property of the community estate of herself and deceased husband."

[1] We are of opinion, however, that the evidence supports the jury's conclusion that the inventory and appraisement were filed with her knowledge and authority and in her behalf, and that it was recognized by the proper probate officer as the inventory of Jane C. Sealey, and that as such the inventory was properly admitted in evidence, and is sufficient to support the contention of the defendants in error that thereby Jane C. Sealey was authorized to convey to R. E. Maddox full title to the land in controversy as she purported to do in 1883. The controlling statutes in force at the time relating to the subject are to be found in an act of the Legislature of Texas approved August 26, 1856, entitled, "An act supplementary to the act of March 13, 1848, entitled, 'An act better defining the marital rights of parties.'" See Gammel's Laws of Texas, vol. 4, p. 469. So far as here necessary to quote, sections 2 and 3 of the act referred to read:

"Sec. 2 That it shall not be necessary for any surviving husband to administer upon the community property of himself and his deceased wife, but he shall have the exclusive management, control and disposition of the same after her death in the same manner as during her life subject to the provisions of this act.

"Sec. 3. That it shall be the duty of the surviving husband at the death of his wife, if she have a surviving child, or children, to file in the county court a full, fair and complete inventory and appraisement of all the community property of himself and deceased wife, to be taken and recorded as in cases of administration, and to have the same force and effect in all suits between parties claiming under it. After which, without any administration or further action whatever in the probate court, he shall have the right to manage, control and dispose of said community property both real and personal, in such manner as to him may seem best for the interest of said estate, and of suing and being sued with regard to the same, in the same manner as during the life of his wife. * * *"

Section 7 of the act, so far as necessary to quote, provides:

"That the surviving wife may retain the exclusive management and control of the community property of herself and her deceased husband, in the same manner, and subject to the same rights, rules and regulations, as provided in the foregoing provisions of this act. * * *"

The act further provides that the survivor so filing an inventory shall keep fair and full accounts of all exchanges, sales, and other disposition of the community property, and upon final partition shall account to the legal heirs for their interest in the community property and in the increase and proceeds of the same. It also provides that, if the survivor should fail or refuse to file an inventory as required by the provisions of this act, the county court, upon complaint made, might require it done, or otherwise grant administration upon the estate. The act further provides that if it should appear to the court as in any way necessary for the protection of the property belonging to the state, or should any of the heirs make proper complaint of mismanagement or waste, that the court might require bond and se-

curity of the survivor for the proper management of the property, etc.

Of this act it was said by our Supreme Court in Cordier v. Cage, 44 Tex. 532:

"The act of 1856 was intended and designed by the Legislature to afford an easy and speedy mode of managing and controlling community estates, and to allow a survivor to manage, sell, or dispose of it, relieved of the trammels thrown around such estates prior to that time, and that it was entitled to a liberal construction."

It will be noted that there is nothing in the statute as quoted which specifically requires the inventory and appraisement to be signed or sworn to by the survivor in person, and an inventory and appraisement wanting in these particulars was expressly upheld in the case of Green v. Grissom, 53 Tex. 432. The inventory and appraisement in that case was made by E. M. Brock and J. N. George, who had been appointed by the court as appraisers and who made a verified statement that it was a true and correct inventory of the property belonging to the estate so far as the same had come to their knowledge. So, in the case of Long v. Walker, 47 Tex. 173, an inventory not including certain lots there in controversy was in effect upheld; the failure mentioned being referred to as an irregularity that might have been corrected upon complaint of those interested. And in the case of Withrow v. Adams, reported in 4 Tex. Civ. App. 438, 23 S. W. 437, in which a writ of error was refused by our Supreme Court (29 S. W. xxi), our Court of Appeals for the Third District held that the facts that an inventory of community property filed in the probate court by the surviving wife did not in terms purport to be an inventory of all of the community property, and that it was not filed and sworn to by her, were not sufficient to invalidate the sale of community property by her.

[2] Plaintiffs in error insist, however, that it appeared in the case of Green v. Grissom, supra, that Mrs. Grissom made application in open court to file an inventory and have the property appraised under the provisions of the statute, and that the court appointed appraisers who returned an inventory that was accepted by the court. The contention is, in substance, that the court was thus given jurisdiction over the person of the survivor, and that hence the omission of the survivor to in person sign the inventory was not fatal. It is true that in the case before us it was not made to appear that Mrs. Jane Sealey made an application to the court, but it is to be remembered that the probate records of Tarrant county, with the exception stated, were burned, and, if necessary to our final conclusion, we do not think it an unreasonable presumption that in this case Mrs. Sealey made the proper application, which has been destroyed, for the appointment of appraisers; for it cannot be disputed that an inventory and appraisement of the community property Samuel Sealey, deceased, was duly presented and sworn to before a clerk of the county court by persons who purported to so act in a most formal manner, and whose action in so presenting the inventory seems to have been formally approved by the presiding judge of the proper court. The evidence fails to present a suggestion that either Adams or Harman could personally profit in this transaction, or that there was fraud or collusion of any character to indicate the action on their part. Moreover, as already mentioned, soon thereafter Jane C. Sealey executed a deed to Wiley Harris, in which she solemnly declared, in substance, that she had filed an inventory of the community estate of herself and deceased husband, and nothing in the record suggests that this declaration could have referred to any other inventory than the one now under consideration. It also appears that from the time of the execution of the deed by Jane C. Sealey to R. E. Maddox, until about the time of the institution of this suit in 1911, neither Jane C. Sealey, nor any of the plaintiffs in error, paid taxes upon, or otherwise claimed, the land in controversy. So that, on the whole, we conclude that under the circumstances of this case, after the lapse of 40 years from the date of Jane C. Sealey's deed to R. E. Maddox, we must uphold the judgment of the court below in behalf of the defendants in error, on the ground that, before making the deed to R. E. Maddox conveying the entire interest in the land in controversy, Jane C. Sealey had duly qualified herself to so do under the act of 1856.

Affirmed.

BUCK, J., not sitting.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes